IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BARBARA DONALD, *as Administrator Ad Litem of the Estate of Edward Burrell, and for the benefit of his next of kin* ) ) ) ) Plaintiff, ) ) v. ) ) TYLER NORRIS, ) ) Defendant. ) | CIVIL ACTION NO. 1:17-00491-JB-N |

## ORDER

This matter is before the Court on Defendant Tyler Norris' ("Norris") Motion for Summary Judgment. (Doc. 87). Plaintiff Barbara Donald ("Plaintiff") filed a response and Norris filed a reply. (Docs. 98 and 107). The parties appeared before the Court for oral argument and have filed supplemental briefs at the request of the Court. (Docs. 125, 126 and 127). The Motion has been fully briefed and this matter is ripe for review.

**I.    INTRODUCTION**

Edward Lee Burrell ("Burrell") Burrell was convicted of driving under the influence in the Municipal Court of the City of Jackson, Alabama and on Burrell was sentenced to serve 60 days in the Clarke County Jail. Norris was the Chief Deputy Sheriff and Jail Administrator for Clarke County, Alabama.[1] While serving his sentence, Burrell suffered a heart attack, eventually dying at Grove Hill Memorial Hospital. Burrell's estate sued Norris for deliberate indifference to

---

[1] Tyler Norris was the Chief Deputy Sheriff and Jail Administrator, while the Sheriff was William Ray Norris. The two are not related. Throughout this Order, Defendant Tyler Norris will be referred to as "Norris." Sheriff William Ray Norris will be referred to as "Sheriff Norris."

1

Burrell's medical needs under the Eighth Amendment and for wrongful death. Norris has invoked qualified immunity as to the deliberate indifference claim and State immunity as to the wrongful death claim. Specifically, Norris contends he was not deliberately indifferent to Burrell's serious medical need and that Plaintiff cannot meet the burden of demonstrating he violated clearly established law. Norris also claims he is entitled to state actor immunity from Plaintiff's state law wrongful death claim.

II.     **UNDISPUTED FACTS**

At 8:59 p.m. on the evening of November 8, 2015, Norris was driving home from the Clarke County Jail. Norris received a call from the jail informing him that Burrell was experiencing extremely high blood pressure and difficulty breathing. Burrell, a 62-year-old black male with a history of hypertension and diabetes, was serving a sixty (60) day sentence for a misdemeanor violation.

Norris, who was then only about four minutes from the jail at the time, pulled over to the side of the road and waited for more information as jail staff re-checked Burrell's blood pressure and consulted with Leah Mosley, the jail nurse. Nurse Mosely determined that Burrell needed to go to the emergency room immediately. Norris directed Burrell be released from the jail and he transported him to the hospital in his Sheriff's Department vehicle. As Burrell was being taken into the emergency room, he suffered a cardiac arrest. Despite significant efforts by emergency room staff, Burrell died.

The following more specific undisputed timeline is relevant to the issues before the Court:

**8:45 p.m.**

1. Sometime after 8:45 p.m., inmate Edward Burrell used the call button in his pod to report to the control room that he was having trouble breathing. The control room officer relayed the information to Officer Chelsea Hinson, the shift supervisor.

2. At Officer Hinson's direction, Corrections Officer Keith Harbin went to F-pod to check on Burrell, brought him to the booking area, and checked his blood pressure, which read 240/160. Officers Harbin and Hinson checked and rechecked Burrell's blood pressure to ensure the reading was accurate.

**8:55 p.m.**

At Approximately 8:55p.m., Norris left the jail for the evening.

**8:59 p.m.**

1. Officer Hinson simultaneously called jail nurse Leah Mosley on a jail phone and radioed Norris on his Southern Linc cell phone's walkie-talkie feature.

2. At this point Norris was about four minutes away from the jail at the intersection of Hebron Road and Old Saint Stephens Road. He immediately pulled over and waited to obtain further information.

3. Hinson informed Norris that she was confirming blood pressure readings and consulting with Nurse Mosley. Hinson informed both Norris and Nurse Mosley that that Burrell was sweating, had high blood pressure, and that he was having trouble breathing.

4. Hinson checked Burrell's blood pressure twice while on the phone with Mosley, once in each arm. Each time, Burrell's blood pressure read 245/160.

5. Nurse Mosley instructed the jail staff that Burrell needed to go to the emergency room.

6. Norris decided it was in Burrell's best interest to take him to the hospital rather than calling for an ambulance.

7. Norris instructed Officer Hinson to release Burrell reflecting "time served" and that he would take Burrell to the hospital in his marked Clarke County Sheriff's Office vehicle.[2] Norris then turned around to return to the jail.

8. Burrell was immediately released and ordered to change into his street clothes. The area where Burrell was directed to change had nowhere for him to sit, and he had difficulty changing. Once changed out of his jail uniform, Burrell was escorted to the jail's sallyport.

**9:06 p.m.**

1. Norris arrived outside of the jail's sallyport at 9:06 p.m. Norris walked into the sallyport and met Burrell and the officers coming out of the jail. Burrell got into the front passenger seat of Norris' vehicle.

2. Norris directed Officer Hinson to call ahead to the emergency room and let them know he was on his way with an inmate who was struggling to breathe. Norris and Burrell then immediately left for the Grove Hill Memorial Hospital emergency room.

**9:08 p.m.**

1. One minute and sixteen seconds elapsed from the time Norris pulled up to the jail until the time he and Burrell left for the hospital. Norris ran the emergency lights and sirens on his marked Sheriff's vehicle on the way to the hospital.

2. On the way to the hospital, Norris asked Burrell if he was in pain, and he replied no, but reported he was having trouble breathing and that he was hot.

**9:10 p.m.**

1. Burrell and Norris arrived at the hospital sometime at or before 9:10 p.m.

2. Norris exited his vehicle, ran to the door, punched in a security code that he knew, and shouted for help and a wheelchair. A nurse promptly came outside with a wheelchair and brought it down the ramp where Norris was parked.

3. Burrell got out of the vehicle and sat in the wheelchair with some assistance.

---

[2] Norris maintains he spoke with his superior, then Clarke County Sheriff William Ray Norris ("Sheriff Norris"), about releasing Burrell and that Sheriff Norris directed him to have Burrell released.

4. As the nurse was wheeling Burrell toward the emergency room, Burrell went limp, his head fell back, and he began to foam at the mouth.

**10:06 p.m.**

1. Hospital personnel unsuccessfully attempted to resuscitate Burrell for almost an hour.

2. Burrell was pronounced dead at 10:06 p.m.

### III. STANDARD OF REVIEW

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is appropriate when the pleadings, affidavits, and depositions demonstrate that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The party moving for summary judgment meets its initial burden by "showing – that is, pointing out" that the non-movant lacks evidence to support the essential elements of his claim. *Id*. at 325. After the movant has met this initial burden, the non-movant must present "substantial evidence" on each essential element of her claim. *Id*. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id*. at 327 (quoting Rule 1, Fed.R.Civ.P.).

### IV. ANALYSIS

Plaintiff's Complaint alleges two causes of action. Count One states a claim for deliberate indifference to Burrell's medical needs under the Eighth Amendment and Count Two states a claim for wrongful death. Norris seeks summary judgment on both counts.

#### A. Count One – Deliberate Indifference (Qualified Immunity)

Norris first asks the Court to grant his summary judgment motion on Plaintiff's claim that he acted with deliberate indifference to Burrell's serious medical needs. Deliberate indifference

to the serious medical needs of an inmate constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a claim for deliberate indifference to a serious medical need, Plaintiff must show: (1) Burrell had an objectively serious medical need; (2) Norris acted with deliberate indifference to that need; and (3) causation between that deliberate indifference and Burrell's death. *See Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021); *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019). An objectively serious medical need is a need "that, if left unattended, poses a substantial risk of serious harm." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

Norris contends he is entitled to summary judgment on this claim because he is entitled to qualified immunity. The affirmative defense of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal immunity question." *Behrens v. Pelletier*, 516 U.S. 299, 306, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) (internal quotation marks omitted). "The purpose of [qualified] immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The public policy purpose undergirding the defense of qualified immunity is that of allowing public officials to perform

discretionary functions without the fear of personal liability or harassing litigation. *See, e.g., Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007); *see also Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (Qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'").

The qualified immunity analysis does not consider an officer's alleged subjective intent; rather, it "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

### 1. Scope of Discretionary Authority

The Court must first determine whether Norris was acting within the scope of his discretionary authority, because that [or "acting within the scope of discretionary authority"] is necessary to the application of qualified immunity. *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004). "To determine whether an official was engaged in a discretionary function, [courts] consider whether the acts the official undertook 'are of a type that fell within the employee's job responsibilities.'" *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). In applying this test, courts consider the "general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional

manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman*, 370 F.3d at 1266.

Here, Plaintiff's claims arise from Norris' actions as Chief Deputy Sheriff and actions of other jail personnel he supervised and directed related to operating the Clarke County Jail. Norris relies on Section 14-6-1 of the Alabama Code in support of the proposition that he was acting within the scope of his discretionary authority. *See* Ala. Code § 14-6-1. Section 14-6-1 states:

> The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law.

*Id*.

Although neither party raised the question of whether Norris (and/or the Sheriff) had legal authority to order Burrell's release from custody before the completion of his sentence, the Court raised this question during oral argument. At the Court's request, the parties provided extensive additional briefing.

Supporting his contention he was operating within his discretionary authority, Norris makes three arguments: (1) Plaintiff waived the issue by not contesting it in response to summary judgment, (2) Norris was actually acting within the scope of his discretionary authority, (3) The United States Supreme Court has never included the discretionary authority element in the qualified immunity analysis, so it's really not required.

8

The Court will address Norris' contention that he was acting within his discretionary function at all material times in this case.³ During oral argument, the Court's question was under what authority Norris could have ordered Burrell released. Norris suggests the questions raised by the Court during oral argument essentially consider the question of discretionary authority too narrowly. The Court was concerned that because Burrell was serving a sentence imposed by a judicial officer, it seemed curious that the Sheriff (or his Chief Deputy) could simply decide that Burrell's sentence had been fully served because of the urgent medical symptoms he was exhibiting.

By way of response, Norris contends the Sheriff could release Burrell because he was merely a municipal prisoner, and the Sheriff was not obligated to hold him in the Clarke County Jail.⁴ Norris contends the sheriff is not required by Alabama law to "enforce the municipal court's sentence by accepting and retaining prisoners like Burrell who have been convicted of violating municipal ordinances." (Doc. 127 at 2). Norris relies on several opinions issued by the Alabama Attorney General noting that the Sheriff and a municipality may enter contractual arrangements to accept such prisoners. No one disputes these opinions – but the cited opinions do not address the situation presented by this case.

There are no facts before the Court regarding the terms of any contractual arrangement between the Clarke County Sheriff, the Clarke County Commission, and the City of Jackson addressing the confinement of municipal prisoners in the Clarke County Jail. There is no

---

³ The Court will address only the second argument as the Eleventh Circuit requires the discretionary authority analysis and this Court questioned whether Norris' actions were within his discretionary authority.
⁴ Norris tries to qualify this position by noting that he "is not arguing that the Clarke County Sheriff is *per se* authorized to override or change a sentence handed down by a municipal court." The Court disagrees with Norris' qualification – to the contrary, this appears to be exactly what he is arguing.

suggestion the municipal judge of the City of Jackson compelled the Clarke County Sheriff to accept Burrell. It is undisputed that Burrell was committed to but had not completed serving his sixty-day municipal sentence in the Clarke County Jail at the time he began exhibiting symptoms of a heart attack.

Norris steadfastly maintains that Plaintiff's allegations against him stem only from his decision not to call 911 and instead transport Burrell to the hospital in his Sheriff's Department vehicle. This represents an unreasonably narrow reading of the Plaintiff's allegations and the opinions expressed by Plaintiff's expert witness Dr. Sonja Harris-Haywood. At this point, Plaintiff's theory of this case appears to be that Norris demonstrated deliberate indifference to Burrell by (1) deciding not to call 911, (2) by deciding to transport Burrell directly to the hospital and (3) directing Burrell's release for "time served" and in the process, requiring him to walk throughout the jail and change into street clothes while standing, exerting himself unnecessarily. The Court believes theories one and two fall within the discretionary function of a law enforcement officer administering a jail. The Court, however, cannot make the leap required to find Norris (or any law enforcement officer) had the authority to order Burrell's release and all that entailed.

Norris cautions the Court to restrict the discretionary function analysis to the "general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." (Doc. 125 at 9 (quoting *Holloman*, 370 F.3d at 1266). Norris further points out that the Eleventh Circuit has found qualified immunity to apply if the actions in question "(1) were undertaken pursuant to

the performance of his duties, and (2) were 'within the scope of his authority.'" *Id*. (quoting *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994)).

Norris also contends Plaintiff failed to demonstrate that he lacked the authority to release Burrell. In asking this Court to afford him qualified immunity, it is Norris who must make this showing. Instead, Norris asks this Court to endorse the premise that because the Sheriff cannot be made to accept municipal prisoners, once he does accept them, such prisoners may be discharged at any time the Sheriff sees fit.[5] If such were the case the Sheriff would assume *de facto* appellate oversite of the sentences for any municipal convicts he voluntarily accepts into the county jail. Norris fails to cite any authority for such a dubious notion.

The Court finds, based on the record before it, that releasing Burrell was an action **inconsistent** with Norris' statutory duties of operating the jail. The Court finds Norris was not acting within the scope of his discretionary authority. As a result, Norris is not entitled to qualified immunity.

### 2. Is Qualified Immunity Proper?

Because the Court found that the first two theories asserted by Plaintiff fall within the discretionary authority of Norris, the Court next employs a two-part analysis to determine whether qualified immunity is proper. First, the Court must determine whether there was a constitutional violation and then the Court determines whether the constitutional right in question was clearly established. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

---

[5] Norris alternatively suggests that even if the Sheriff did not have the authority to release Burrell, such action would merely render the release order void. As this suggestion goes, Burrell would simply have continued to be in custody while he was at the hospital. This alternative argument simply makes clear to the Court that such a decision could never be within the discretionary function of Norris.

### a. Was there a Constitutional Violation – Deliberate Indifference to Burrell's serious medical needs?

Plaintiff alleges Burrell was in medical distress and not given the proper emergency medical care or medical assistance. The Supreme Court has cautioned that not every allegation of inadequate medical treatment states a constitutional violation. *See Estelle*, 429 U.S. at 105. In situations relating to medical care, "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Three tests inform the Court whether Plaintiff's deliberate indifference claim against Norris will survive summary judgment. "First, [Plaintiff] must satisfy the objective component by showing that [Burrell] had a serious medical need." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005) (per curiam). "Second, [Plaintiff] must satisfy the subjective component by showing that [Norris] acted with deliberate indifference to [Burrell's] serious medical need." *Bozeman*, 422 F.3d at 1272). "Third, as with any tort claim, [Plaintiff] must show that the injury was caused by the defendant's wrongful conduct." *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### b. Did Burrell's high blood pressure and difficulty breathing qualify as a serious medical need? (OBJECTIVE TEST)

A serious medical need sufficient to satisfy the objective component is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann*, 588 F.3d at 1307 (11th Cir. 2009) (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds by *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Here Norris does not dispute

that Burrell's medical needs presented a serious medical condition satisfying the objective test. The Court agrees.

### c. Did Norris Act with Deliberate Indifference to Burrell's Serious Medical Need? (SUBJECTIVE TEST)

"The subjective component of the test for this type of Eighth Amendment violation requires a showing that a prison official acted with deliberate indifference to the prisoner's serious medical need."  *Goebert*, 510 F.3d at 1326 (citing *Bozeman*, 422 F.3d at 1272).  "This means that the '[p]laintiff must prove three things:  (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence.'"  *Goebert*, 510 F.3d at 1326-27 (citing *Bozeman*, 422 F.3d at 1272) (second alteration in original)).  In *Farmer v. Brennan*, the Supreme Court has described the level of conduct a plaintiff must prove as akin to criminal recklessness.  511 U.S. 825, 839-40 (1994) (stating "subjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishment Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment").

### d. Did Norris Have Subjective Knowledge of a Risk of Serious Harm?

The Court is persuaded that Norris had subjective knowledge of the risk of serious harm to Burrell.  Norris is the survivor of a heart attack.  Norris acknowledges this fact through his testimony and argument.

### e. Did Norris Disregard the risk of Serious Harm to Burrell?

Plaintiff argues, and expert witness Dr. Sonja Harris-Haywood opined, that Norris should have first engaged emergency services and Burrell should not have been made to ambulate throughout the jail, change his clothes, walk himself outside, and load himself into Norris' vehicle.

13

(Doc. 98). In other words, Plaintiff contends the decision not to call 911, the decision to drive Burrell to the hospital, the decision to release Burrell specifically causing him to ambulate throughout the jail and change into street clothes all constitute disregard of the risk of serious harm.

Norris' response to Plaintiff's arguments on this issue is curious. Norris describes Plaintiff's argument against summary judgment as focused exclusively on the fact that neither Norris nor jail personal called 911 and that Norris drove Burrell to the hospital himself. Norris keys on the delays that often occur in the Grove Hill community because of the limited ambulance service available. Norris knows this from his own heart attack and the decision he and his wife made to drive him to the hospital rather than calling 911. All are valid points, but do not change the fact that no one at the jail called 911 to even see if ambulance services were available during the time he was driving back to the jail – so we will never know. Had emergency services been called, this would not be an open question of material fact.

Norris also addresses the question of whether it was appropriate for him to have Burrell released from jail so he could be responsible for his own medical care. At this point, it is the Court's concern that Norris has no authority to commute a sentence announced by a duly appointed judicial officer.[6] Moreover, Plaintiff's expert contends that the process of releasing

---

[6] The record actually indicates Norris doubted the authority to commute Burrell's sentence:

> Q. All right. We were talking about the statement or the summary of the statement here is a better word. All right. You called the sheriff and it says, and they were going to release Burrell on time served. So what I want to talk about is what does that mean, released on time served?
> A. That he was going to be released from the jail on his own recognizance. Basically the sheriff had the authority to give him time served so he could go to the doctor on his own expense instead of the county's expense.
> Q. And who gave him that authority?
> A. Well, I don't know. He's the sheriff.

14

Burrell involved otherwise unnecessary exertions, significantly compromising his health. To this argument, Norris offers no response. The Court specifically finds that genuine issues of material fact render summary judgment inappropriate.

### f. Was Norris' Conduct More than Gross Negligence?

As to whether Norris' actions constitute something more than gross negligence, the Court is persuaded that there is evidence from which a jury could find Norris amounted to more than gross negligence. "A claim for gross negligence must state the same elements required for negligence, the defendant's knowledge of the probable consequences of not taking care, as well as an indifference to those consequences." *Upton v. Plantation Pipe Line Co.*, No. 2:17-CV-00771-LSC, 2018 WL 813244, at *3 (N.D. Ala. Feb. 9, 2018) (citing *Wilkinson v. Searcy*, 76 Ala. 176, 181 (Ala. 1884)). The decision to have Burrell ambulate and exert himself by changing into his street clothes before being transported to the hospital provides sufficient evidence in this case. "When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference." *Harris v. Coweta County*, 21 F.3d 388, 393 (11th Cir.1994).

---

Q. Well, he was -- my understanding Burrell was there based on a charge and a sentence stemming from something related in the city of Jackson?
A. That's right.
Q. So they have a judge there from what I understand.
A. Who?
Q. For the city, city of Jackson?
A. Yes, but the sheriff is over this jail.
Q. And he has the authority to commute someone's sentence early and release them?
A. So he thinks.
Q. Okay. Had you seen that done before this date --
A. Absolutely.

(Doc. 83-20 at 58-59).

Plaintiff has offered un-refuted expert testimony supporting this position. This is particularly significant considering Norris' arguments relating to the propriety of releasing Burrell. If Burrell had been released from the Clarke County Jail, what did it matter what he was wearing when he reached the hospital? The Eleventh Circuit has repeatedly held that deliberate indifference includes the "delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, where the delay does seriously exacerbate the medical problem, and where the delay is medically unjustified." *Fields v. Corizon Health, Inc.*, 490 F. App'x 174, 182 (11th Cir. 2012) (internal quotations omitted). And a conscious decision to "take an easier and less efficacious course of treatment also constitutes deliberate indifferen[ce]." *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *see also Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016) (abrogated on other grounds) ("A defendant who unreasonably fails to respond or refuses to treat an inmate's need for medical care or one who delays necessary treatment without explanation or for non-medical reasons may also exhibit deliberate indifference.").

Accordingly, at this stage and on this record, Norris is not entitled to summary judgment on Count One of the Complaint.

### B. Count Two – Wrongful Death

As far as Count Two goes, Norris also contends he is entitled to summary judgment. "The law is clear in Alabama that sheriffs are constitutionally established executive officers of the State of Alabama." *Ex parte Sumter County*, 953 So. 2d 1235, 1239 (Ala. 2006). Under Article I, Section 14, of the Alabama Constitution, sheriffs and deputy sheriffs have absolute immunity from lawsuits when "acting within the line and scope of their employment." *Ex parte Sumter County*,

953 So. 2d at 1239 (internal citations omitted).  These Alabama Supreme Court cases are consistent with the text of the Alabama Jailer Liability Protection Act which states:

> The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, ***as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law***.

Ala. Code § 14-6-1 (emphasis added).

In this case, the Court has found Norris was not acting in the line and scope of his duties or in compliance with the law when he ordered directed Burrell be released from the jail on the basis of "time served." (Doc 83-20 at 59-60).  On the basis of this finding summary judgment is not warranted on Count II of the Complaint.

### V. CONCLUSION

For the foregoing reasons Norris' Motion for Summary Judgment is **DENIED**.

**DONE and ORDERED** this 27th day of March, 2023.

/s/ JEFFREY U. BEAVERSTOCK
CHIEF UNITED STATES DISTRICT JUDGE